# 8580

## FORM FOR USE IN APPLICATION

### FOR HABEAS CORPUS UNDER 28 U.S.C. §2254

JIM EDWARD MASSEY
_____
Name

AIS # 109805
_____
Prison Number

LIMESTONE C.F., 28779 NICK DAVIS ROAD, HARVEST, AL., 35749-7009
_____
Place of Confinement

United States District    FOR THE SOUTHERN    District of    ALABAMA

Case No.    CJ · 66-1 · KD · M    1:09 CV 198 - WKW
(To be supplied by Clerk of U. S. District Court)

JIM EDWARD MASSEY _____ , PETITIONER
(Full name) (Include name under which you were convicted)

BILLY MITCHEM, WARDEN _____ , RESPONDENT
(Name of Warden, Superintendent, Jailer, or authorized person having
custody of Petitioner)

                              and

THE ATTORNEY GENERAL OF THE STATE OF    ALABAMA, TROY KING.
_____ , ADDITIONAL RESPONEDNT

        (if petitioner is attacking a judgment which imposed a sentence to be served in the future,
petitioner must fill in the name of the state where the judgment was entered.  If petitioner has a
sentence to be served in the future under a federal judgment which he wishes to attack, he should file
a motion under 28 U.S.C. §2255, in the federal court which entered the judgment.)

### PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

#### INSTRUCTIONS--READ CAREFULLY

(1) This petition must be legibly handwritten or typewritten and signed by the petitioner under penalty of
perjury. Any false statement of a material fact may serve as the basis for prosecution and
conviction for perjury. All questions must be answered concisely in the proper space on the form
The Judicial Conference of the United States has adpoted, effective 1/1/83, the 8-1/2 x 11 inch paper
size standard for use throughout the federal judiciary and directed the elimination of the use of legal
size paper.  All pleadings, etc. filed after 12/31/82 must be on 8-1/2 x 11 inch paper, otherwise we
cannot accept them.

(2) Additional pages are not permitted except with respect to the facts which you rely upon to support

your grounds for relief. No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memornadum.

(3) Upon receipt of a fee of $5 your petition will be filed if it is in proper order.

(4) If you do not have the necessary filing fee, you may request permission to proceed in forma pauperis in which event you must execute the declaration on the last page, setting forth information establishing your inability to prepay the fees and costs or give security therefor. If you wish to proceed in forma pauperis, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

(5) Only judgments entered by one court may be challenged in a single petition. If you seek to challenge judgments entered by different courts either in the same state or in different states, you must file separate petitions as to each court.

(6) Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the petition you file seeking relief from judgment of conviction.

(7) When the petition is fully completed, the original and two copies must be mailed to the Clerk of the United States District Court whos address is
P.O. Box 711, Montgomery, AL 36101

(8) Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.
*If you are proceeding in forma pauperis, only the original petition needs to be filed with the Court.

## PETITION

1. Name and location of court which entered the judgment of conviction under attack
CIRCUIT COURT OF GENEVA COUNTY, P.O. BOX 86, GENEVA, AL 36340

2. Date of judgment of conviction       22-Sep-97

3. Length of sentence       LIFE       Sentencing Judge       P.B. MCLAUGHLIN

4. Nature of offense or offenses for which you were convicted:       MURDER

5. What was your plea? (check one)
( a ) Not guilty [ ]
( b ) Guilty [XX]
( c ) Nolo contendere [ ]
If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. Kind of trial: (check one)

( a ) Jury ☐
( b ) Judge only ☐

7. Did you testify at the trial?    Yes ☐    No ☐

8. Did you appeal from the judgment of conviction?    Yes ☐    No ☒

9. If you did appeal, answer the following:
( a ) Name of court    N/A _____
( b ) Result _____
( c ) Date of result _____
If you filed a second appeal or filed a petition for certiorari in the Supreme Court, give details:
_____
_____
_____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☐    No ☒

11. If your answer to 10 was "yes", give the following information:
( a )    (1) Name of court    N/A _____
         (2) Nature of proceeding _____
         _____
         (3) Grounds raised _____
         _____
         _____
         _____
         (4) Did you receive an evidentiary hearing on your petition, application or motion?
         Yes ☐    No ☐
         (5) Result _____
         (6) Date of result _____
( b )    As to any second petition, application or motion give the same information:
         (1) Name of court    N/A _____
         (2) Nature of proceeding _____
         _____
         (3) Grounds raised _____
         _____
         _____
         _____
         (4) Did you receive an evidentiary hearing on your petition, application or motion?
         Yes ☐    No ☐
         (5) Result _____
         (6) Date of result _____

( c )    As to any third petition, application or motion, give the same information:
      (1) Name of court      N/A _____

      (2) Nature of proceeding   _____

      (3) Grounds raised      _____

      _____

      _____

      _____

      (4) Did you receive an evidentiary hearing on your petition, application or motion?
      Yes ☐      No ☐
      (5) Result
      (6) Date of result     _____

( d )    Did you appeal to the highest state court having jurisdiction the result of any action taken on
      any petition, application or motion:
      (1) First petition, etc.     Yes ☐    No ☐
      (2) Second petition, etc.   Yes ☐    No ☐
      (3) Third petition, etc.    Yes ☐    No ☐

( e )    If you did <u>not</u> appeal from the adverse action on any petition, application or motion, explain
      briefly why you did not:     Petitioner never filed an appeal, nor any motion prior to this
      filing, as he was unaware of the possibility to do so. His trial attorney had misled him to
      believe that such was not possible._____

      _____

      _____

12  State concisely every ground on which you claim that you are being held unlawfully. Summarize
briefly the facts supporting each ground.

    CAUTION:     In order to proceed in the federal court, you must ordinarily first exhaust your
                     state court remedies as to each ground on which you request action by the
                     federal court. As to all grounds on which you have previously exhausted
                     state court remedies, you should set them forth in this petition if you wish to
                     seek federal relief. If you fail to set forth all such grounds in this petition, you
                     may be barred from presenting them at a later date.

For your information, the following is a list of the most frequently raised grounds in relief in habeas
corpus proceeding. Each statement preceded by a letter constitutes a separate ground for possible
relief. You may raise any grounds which your may have other than those listed if you have
exhausted all your state court remedies with respect to them. However, <u>you should raise in this
petition all available grounds</u> (relating to this conviction) on which you base your allegations that
you are being held in custody unlawfully.

If you select one or more of these grounds for relief, you must allege facts in support of the ground
or grounds which you choose. Do not check any of the grounds listed below. The petition will be
returned to you if you merely check (a) through (j) or any one of these grounds.

-4-

a.) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

b.) Conviction obtained by use of coerced confession.

c.) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure, [where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim].

d.) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest, [where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim].

e.) Conviction obtained by a violation of the privileges against self incrimination.

f.) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

g.) Conviction obtained by a violation of the protection against double jeopardy.

h.) Conviction obtained by action of a grand jury or petit jury which was unconstitutionally selected and impaneled.

i.) Denial of effective assistance of counsel.

j.) Denial of right of appeal.

A. Ground one:     Petitioner's conviction was obtained by a plea of guilt that was not made voluntarily, due to the ineffective assistance of his ocunsel.

Supporting FACTS (tell your story briefly without citing cases or law:     Petitioner Massey,(represented by William J. Paul and David ~~Rousseau~~) involuntarily pled guilty to Murder, when the State had entered into a plea agreement wherein it was agreed that petitioner would plead guilty to Manslaughter. Petitioner's counsel was ineffective when they did not point out that the State could not repudiate their plea agreement with impunity. This ineffectiveness rendered petitioner's plea of guilt involuntary. For while it is certain that the State need not enter into any plea agreement, once they do so, they must not be allowed to withdraw from that agreement with impunity. In the instant case, petitioner's attorney was substantially ineffective for allowing the State to repudiate their agreement without informing petitioner of the State's fiduciary contractual trust. This, along with misinformation regarding appeal, has resulted in State procedural default.

B. Ground two:     Petitioner's conviction was obtained in violation of his constitutional right against self-incrimination.

Supporting FACTS (tell your story briefly without citing cases or law:     Petitioner Massey, upon reaching an agreement with the State to plead guilty to a reduced charge of Manslaughter, allowed for his 5th Amendment shield to drop, when he began to speak openly, giving what would be construed as inculpatory statements to those around him. Petitioner would never have incriminated himself in such a manner, if he knew that the State was going to withdraw his plea agreement. Petitioner, upon securing the deal with the State, was told by his attorney's that it was fine to talk to others in regards to his guilt. As such, he shared what had occurred the day of the 'manslaughter' with the Sheriff, and several inmates and jailors. Clearly petitioner was tricked into self incrimination.

**BRIEF IN SUPPORT OF § 2254**

**Ground I.**   *Plea of Guilt rendered involuntary due to the ineffectiveness of counsel, as guaranteed by the 6th Amendment of the U.S. Constitution;*

**Ground II.**   *Petitioner's conviction was obtained in violation of his 5th Amendment right against self-incrimination.*

**Statement of Case**

Petitioner Jim Edward Massey, hereinafter "Massey", was arrested on the 7th day of January 1997, and charged with Murder made capital pursuant to *Code of Alabama 1975 § 13A-005-040(a)(17)*, for the shooting death of his brother Johnny Roy Massey on January 6th, 1997. (Warrant # 97-16; Complainant: B.M. Tucker, ABI, Dothan, AL., 36301)   Massey was immediately thereafter indicted on January 9th, 1997, by a specially convened Grand Jury of Geneva County in a two (2) count indictment charging violations to *Code of Alabama 1975 §§ 13A-5-40(a)(17) & 13A-5-40(a)(18)*. (Circuit Court Case # CC-97-27)

William J. Paul and David W. Rousseau, of P.O. Box 429, Geneva, Alabama, 36430, were appointed as counsel for Massey, and an arraignment was had in the Geneva County Circuit Court on the 6th day of February 1997; the Honorable Judge P.B. McLaughlin, presiding.   At arraignment, Massey pled 'not guilty' as to each count of the indictment.   A plethora of procedural motions passed between the parties, and on July 2, 1997, trial was ordered set, for September 22, 1997 at 9:00 A.M.

During the interim from the setting of the trial date in July, and the eventual date of trial in September, several *meetings and conversations* were held between counsels for Massey, and the District Attorney's office.   During these meetings, the State presented an offer of a plea agreement.   The offer presented essentially was, if Massey would agree to plead guilty to the lesser-included offense of Manslaughter as to Count II of the indictment, Count I would be nolle

1

### *Statement of the Facts*

Other than the Clerk's record, there exists no other documentation by which I, an inmate legal assistant, am able to ascertain the facts of the case. Herein, however, I present Massey's fact recitation and explanation; as well as other eyewitness accounts.

The law's truth never ends strictly with the evidence. It depends as well on what attorneys call 'inference' and what less-restricted souls refer to as 'imagination'. My surmises, my conjecture and inference  - my imagining - would never pass muster in a courtroom. However, I regard them as the only avenue to the whole truth that the law —and a story – always demands.

In the instant case, to understand the present, one must observe the past. This story, an obvious tragedy of Greek proportions, begins with a long simmering sibling rivalry. Stubborn pride and familial secrecy were the primary actors on this stage. In 1980, petitioner Massey, at the behest of his mother, accepted some 30 acres of land on the family farm in Geneva County. At the time, Massey's brother, the victim in this case, Johnny Roy Massey, was living with their mother on another section of the 200+ acre property. Petitioner Massey did not reside in the home with his mother and brother Johnny, but instead had moved his own trailer onto the property, and resided therein.

Almost from day one, Johnny Roy Massey (hereinafter Johnny) seemed upset and unhappy with his brother Jim's presence on the farm. Each time, nearly, that the petitioner would venture over to his Mom's house to visit, if Johnny were there an argument would ensue. On one such occasion, shortly after Massey had moved, his brother Johnny, in a state of extreme agitation and inebriation told Massey that "this farm is not big enough for the two of us, not by a long shot!" Johnny seemed to continue this theme of discontent, and eventually, in 1985 it reached a boiling point. Johnny was known, by all that knew of him well, to own and carry a .38 caliber pistol, and after what was now seemingly an ongoing feud, one day in 1985, Johnny, riding as a passenger in

3

another car, ambushed the petitioner at a crossroads, firing his pistol into the petitioner's girlfriends automobile, upon which Massey was a passenger. Luckily, the petitioner was not struck, nor injured. And, in keeping with their familial *code of silence*, the family did not want any outsiders involved and, therefore, the incident was downplayed to the Sheriff, and no formal charges were brought against Johnny Massey. However, due to the seriousness of this act, Mrs. Massey, Johnny's mother, insisted that Johnny move out of the house that he shared with her, and that he leave the family farm. Johnny did so, by relocating to Florida.

Then in 1990, in a move to forgive, and attempt to reconcile the family, Mother Massey sold the old 6-acre homestead to Johnny; allowing him to move back on the family farm. He did this with the express blessings of the petitioner. During the time of Johnny's absence from the farm, his mother had constructed and moved into a new home, away from the homestead, thus, Johnny did not reside with her as before, but in his own home.

Shortly after Johnny's return, in August of 1991, Joe Massey, brother to Jim and Johnny, committed suicide. This act tended to unify the remainder of the family, as tragedy often does – including Jim and Johnny – and led to a period of peace therein. However, as one might well suspect, this peace was to be short lived. Johnny again became verbally abusive and threatening to the petitioner and, Massey again began to live in constant fear for his personal safety. It seems that Johnny was determined to run Massey away from the farm and, from his family.

Then in 1995, Johnny with his now familiar and seemingly ever present .38 pistol, went to the home of the petitioner and for no apparent reason, shot and killed one of the petitioner's goats. When confronted by the petitioner and asked why he had done this, Johnny in an obnoxiously intoxicated state, denied any participation in the shooting. During this confrontation however, Johnny drunkenly mumbled, apparently unaware even, that it was the petitioner he was talking to, said: "Eddies got to go" speaking of the petitioner. Now, while this was far from the first time

4

that Johnny had verbally threatened the life of Massey, the time stands out more profoundly in the mind of the petitioner as different, more ominous.... real.

Johnny's behavior continued to become increasingly more erratic and out of control, then in 1996, around eight months prior to his death, Johnny shot his wife with the .38 pistol. She lost a kidney and a portion of her liver as a result, but survived. Then, in what is a now all too unfamiliar theme, no charges were pressed against Johnny, as she claimed that she had shot herself; again, to keep it *"in the family"*.

Tragically, thereafter, on August 24, 1996, a second Massey brother, Danny, also committed suicide. The affects of this suicide devastated the petitioner, and he began to spiral into a depression, which resulted in, alcohol abuse; in the petitioner's ill-advised attempt to cope with his unbearable grief. This alcohol abuse continued by the petitioner, to where in time, he began to experience all of the manifestations commonly related to alcohol toxicity – paranoia, unfounded fears, and agitation, to name but a few. This paranoid fear contributed to the events that led to the death of Johnny Massey.

On the fated day, January 6th, 1997, all of these elements of past realities, coupled with the delusional paranoia and fear of the petitioner, collided with understandably devastating effects.

On this day, Massey drove over to his brother Johnny's house, in order to borrow a videotape that had belonged to their recently deceased brother Danny. When he asked Johnny for the tape, he refused to give it to him. Angry, Massey returned to his house, where he continued to drink for about four hours, all the while becoming more agitated with his brothers refusal to allow him to borrow the tape. Finally, he decided that he would go over to his mother's house and explain what had occurred. Just as Massey was arriving at the driveway of his mother, Johnny, who had obviously gone there prior, came pulling out. This put Johnny's car directly in front of Massey's car on the road. Rather than pull into his mother's, Massey began to follow Johnny.

(The following recitation of the accounts of that day is compiled from several eye witnesses to the occurrence, as the petitioner's memory of the day, is less than reliable) When Johnny noticed that Massey was following him, he abruptly stopped his auto, and opened his door. Massey stopped some distance behind him, (apparently fearful of getting too close to him, for fear Johnny might shoot at him, as he had done previously), and when he stopped, Johnny got back in his car and continued down the road. Suddenly, at the driveway of their other brother, William Wayne Massey, Johnny jerked his car into William's U-shaped drive. As Massey continued along the road, Johnny opened his car door, which was now on the opposite side of the auto from Massey's vehicle, which remained on the road. It was at this moment that Massey, for whatever confounded reason or manifestation of paranoid fear, fired his shotgun from his vehicle, into the passenger side door of Johnny Massey's vehicle. Massey continued on to his home, where he parked his car, and ran into the woods, fearing that his brother Johnny would be coming after him for shooting his truck. Little did not the petitioner know, nor suspect, that one of the pellets from his shotgun blast had hit Johnny Massey directly in the heart, killing him.

The next morning, the petitioner remembers coming out of the woods, only to find sheriff's deputies at his home. When they approached him, they told him that his brother was dead. At first, Massey was confused and stated, that he knew his brother was dead – he had killed himself last year. He did not realize that they were speaking of Johnny, and that he was responsible for his death.

To this date, petitioner Massey does not wish to tarnish the memory of his brother by speaking ill of him. But it should be more than apparent, that Johnny Massey was someone to be fearful of, and, in the instant case, as the facts bear out, one can easily see how the actions of this petitioner resulted in part from his long term fear of Johnny, and for his own life.

6

From the onset of the proceedings against this petitioner, he has shared his remorse and recognition of responsibility in the death of his brother. It is obvious listening to his recollection of these events, that he continues to grieve greatly over the death of his brother, and wishes as one might assume, that he would give anything to go back and re-live that day again. Yet, while understanding his respect for Johnny's brothers memory, I must present to you legal facts; one of which is simple – Petitioner Massey never formed any *mens rea* to injure his brother. He just reacted, and his reaction is not outside of the realm of any reasonable understanding of a jurist.

Given these facts, it is easy to see why the State was willing to reduce the charges to one count of Manslaughter, and in July, when petitioner's counselor Rousseau came to him with the plea agreement for Manslaughter, EVEN WITH THE UNDERSTANDING THAT SAID PLEA WAS TO RESULT IN A *LIFE* SENTENCE, petitioner Massey accepted the offer.

Obviously, Massey accepted this plea, not out of a fear of a greater punishment, but merely to accept a plea of responsibility wherein it could be noted that he never **intended** to hurt his brother. Moreover, in the ongoing vein of family secrecy, petitioner's family wanted him to accept any plea that would vitiate the need for a public trial, where any of their past family secrets might otherwise to revealed.

And, while this plea, should have been easily accomplished, it was not to be; as the attorney's for the petitioner, through self-serving actions, deprived the petitioner of even this, when they convinced him to plead guilty to Murder.

In order to properly evaluate the egregiousness of the ineffectiveness of this petitioner's counsel, it should be noted that Petitioner Massey has tested at an education level equivalent to that of a third grader. As such, he was not able to understand any legal jargon or nuances presented to him. He was therefore left in totality to trust and rely completely upon the advice and explanations of his attorney's. A cursory review of the case action summary sheet in the instant

7

case would seem to reveal that counsel's for the petitioner were imminently more concerned with billing hours and fee declarations, than they were in protecting the rights of there counsel; as the record is replete with frivolous motions and attorneys fee declarations requests.

Even after his attorney's had convinced Massey that pleading guilty to Murder 2nd Degree (?) was in his best interest, without telling him that the State was bound to honor the agreement that had previously been offered to and accepted by the petitioner, they went one cruel step further; they told the petitioner after his plea and sentence, not to worry, that they would let things die down a little, and then in a month or so – when we all know jurisdiction would be lost – get him back into court for a reduction of his sentence.  Sad.

8

Petitioner was denied his 6th Amendment guarantee of effective assistance of counsel, resulting in a breach of his 5th Amendment right to be free from self-incrimination. These violations of constitutional due process resulted when the attorney's for the petitioner allowed for the State to repudiate their plea agreement with impunity, thereby failing to act in a manner consistent with the edicts of *Strickland v Washington*, **466 U.S. 668 (1984).** This fundamental failure resulted in an erroneous conviction as petitioner's plea was rendered involuntary. The subsequent misinformation of the counsels to petitioner resulted in a procedural default. Such ineffectiveness is the cause for the procedural default, and the prejudice will be shown to be reflexive as to the result.

### *Procedural Default*

First, allow your petitioner to address head-on why this Court should hear this habeas petition, which is defaulted on its face due to the expressed statute of limitations applicable to said.

This petitioner has never filed for any collateral review of the above case, and additionally, his plea and sentence were entered on September 22, 1997; now nearly 10 years hence. as such, petitioner has no recourse in State court. The claims of this petitioner have heretofore been deemed non-jurisdictional; "a challenge to the voluntariness of a guilty plea is a not jurisdictional and. although it can be raised for the first time in a Rule 32 petition, it is subject to the limitations period in Rule 32.2(c) Ala.R.Crim.P"; *Catchings v State*, **684 So.2d 168, 169 (Ala.Crim.App.1995).** Also, "an ineffective assistance claim is not jurisdictional; therefore, it is subject to the two-year limitations period in **Rule 32.2(c)**", *Knight v State*, **727 So.2d 900, 901 (Ala.Crim.App.1999).**

The Alabama Criminal Court of Appeals noted in *Arthur v State*, **[Ms. CR-00-1393, April 25, 2001] 820 So.2d 886, 889;** that "the court's of this State insofar as our research shows, have

**never** recognized an exception to the limitations period in Rule 32.2(c). This rule is mandatory, not permissive, and specifically provides that a trial court 'shall not entertain any petition' if that petition is filed outside the limitations period and the petition fails to raise a jurisdictional defect", *Id.* **at 889**, (emphasis added).

As such, with all state avenues closed to petitioner, "[if] state remedies are no longer available, petitioner must show either 'cause and prejudice' or manifest injustice' to overcome the procedural default." *Towers v Phillips*, **7 F.3d 206, 210**. A petitioner may show cause for failure to raise and exhaust a claim by proving that "some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule" *Murray v Carrier,* **477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)**. " Ineffective assistance of counsel...that makes compliance impracticable is sufficient grounds for 'cause'. *Id.* **at 488**. As for prejudice, petitioner "must show that...the result of the proceeding would have been different [lacking said ineffectiveness]" *Wright v Hopper*, **169 F.3d 695, 703 (11th Cir.1999).**

To prevail on a claim of ineffective assistance of counsel in the context of a guilty plea, Massey must satisfy the two-pronged test set forth in *Strickland v Washington,* **supra**. See also, *Hill v Lockhart*, **474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)**. Second, Massey must show, in addition to the fact that counsels performed incompetently, that there is "a reasonable probability that, but for counsel's errors" there would have been a different outcome. *Hill*, **474 U.S. at 59**. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings. *Id.* **at 694**.

As we explore the law in relation to this petitioner's claims, and review said in the context of the facts of the instant case, it will become clear that petitioner will have shown adequate 'cause' and 'prejudice' to overcome the procedural defaults of his petition.

The writ of habeas corpus is "the great key of liberty to unlock the prison doors of tyranny". Such was the opening sentence of that great jurist, Thomas H. Watts, in the case of *Ex parte Williams*, in the county court of Pike County and quoted with approval by the Alabama Supreme Court in *State v Thurman*, **17 Ala.App. 656, 658, 88 So. 61**. Habeas corpus is part of the law of this state, preserved to us under § 17 of the *Declaration of Rights*, that it may be used by those who are illegally restrained of their liberty. It cannot be bound down by the thongs of technical pleading, nor its swift and effective relief hindered by capitious objection or finespun theories of procedure. *Barton v Bessemer*, **27 Ala.App 413, Ala.App 1936.**

In the instant case, petitioner's counsels failure to inform his client of the binding contractual agreement with the State was substantially prejudicial; as petitioner would not have plead guilty to a greater offense than that which he understood as to his plea agreement had he been so properly counseled. The courts of Alabama, as well as the federal courts have opined that a plea agreement is binding. There seems to be no apparent conflict with the progeny of the law with regards to such. Essentially, it is not incumbent upon a states attorney to enter into any plea-bargaining with a defendant. However, once the state has done so, they are bound to carryout their agreements, unless the defendant fails to perform per agreement.

The 11th Circuit has offered opinion as to the contractual obligations in regards to plea agreements. "Any interpretation of the negotiated plea should also adhere to the doctrine of *contra perferentum,* a canon of construction in contract law that counsel's in favor of construing ambiguities in contract language against the drafter. The 11th Circuit is also clear that the construction of plea agreements 'is governed generally by the principles of contract law, as we have adapted it for the purposes of criminal law'; See *U.S. v*

10

*Pielago*, 135 F.3d 703 (11th Cir.1998). It makes little sense to apply that canon to the defendant's detriment where the issue is whether the defendant knowingly and voluntarily waived a right in a plea agreement, and the defendant has raised ineffective assistance claims against his lawyer (the drafter of the agreement) regarding the plea agreement. *None* of our cases has applied the *contra perferentum* doctrine against a defendant in such a situation. Instead, in this circuit we have held repeatedly that ambiguities in plea agreements should be resolved against the government [state]. See **e.g., *San Pedro v U.S.*, 79 F.3d 1065, 1074 (11th Cir.1996); *U.S. v Rewis*, 969 F.2d 985 (11th Cir.1992); *U.S. v Jefferies*, 908 F.2d 1520, 1523 (11th Cir.1990); *Allen v Thomas*, 161 F.3d 667, 671 (11th Cir.1998).**

The essence of this argument is rather simple, while the procedural stairway is steep. Massey's plea was rendered involuntary because of the State's alleged breach of the plea agreement, and his counsel was ineffective for not bringing the alleged breach to the attention of the trial court. In reliance upon the State's offer, the petitioner's acceptance of said, and his attorneys counsel as to such; Massey relinquished his privilege against self-incrimination, effectively denying him his 5th Amendment guarantees.

Let us note that while there was not a written agreement that this petitioner will be able to produce, a verbal contract as employed in a plea agreement between counsel and state is deemed sufficient. Herein, petitioner's counsel Rousseau negotiated the plea agreement with the State, delivered the proposition to the petitioner, and he accepted. At no time did this petitioner ever repudiate the agreement with the State. There were no extraneous requirements of the agreement conveyed to the petitioner.

In *Ex parte Yarber*, **457 So.2d 1330, 1336 (Ala.1983),** the Supreme Court addressed the necessity that there be in place a written agreement between the parties before it becomes

11

is to be construed in favor of the defendant. There existed no extraneous condition of the plea contract, whereby this petitioner, could be deemed to have been negligent. The State, with an unfettered path due to the petitioner's counsels failure to provide adequate constitutional representation, clearly repudiated the plea agreement. The result is manifestly unjust, as it has resulted in the conviction of *exactly* the type of individual that our due process constitutional writers envisioned in their drafting of said; an innocent, unable to intellectually protect themselves from legal complexity.

### *Conclusion*

There are several 'givens' in the instant case.....Petitioner Massey caused the death of his brother Johnny, on January 6th 1997, by shooting him with a shotgun. Counsels for the petitioner entered into a plea agreement with the office of the district attorney, after which, that same said agreement for a negotiated plea to Manslaughter was conveyed to, and accepted by, the petitioner. Petitioner Massey shared the contents of the plea agreement with several jailers and inmates at the Geneva County Jail. Most particularly, Massey spoke several times with Chief Deputy Ken Tice, who was aware of the Manslaughter plea agreement, and questioned Massey about the logistics of his entering the plea to the court. The transportation Deputy [Doe], from the jail, was also privy to the negotiated plea offer, as he had transported the petitioner to court on two (2) separate occasions ostensibly to enter this plea before the court. Counsels for the petitioner then, for no apparent reason, allowed the State to repudiate that agreement without informing the petitioner as to his rights according to said. This action rendered petitioner's subsequent misunderstood plea to Murder [2[nd] Degree], involuntary, as petitioner lacked the proper counsel or information to make a constitutionally informed decision to plea. You must also factor into this equation the intellectual capabilities of the petitioner in relation to his ability to comprehend counsels edicts. Progeny with regards to such teach us that this factor may not be ignored in such an evaluation. Voluntariness

14

of a plea implicates "*[I]gnorance, incomprehension,*" and " inducements" as well as "coercion, terror" and "threats". *Boykin v Alabama,* 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). Herein, petitioner was ignorant of the fact that there was no such available charge as Murder 2nd Degree, and believed his attorney's – as one should be able to do – in pleading to what he understood to be an admission to his "*involuntary*" killing of his brother. Petitioner Massey would **never** - even taking into consideration the insistence of his counsel and family - NEVER, have pleaded guilty to a charge that would deem him to have intentionally caused the death of his brother.  His counsel was fully aware of this, and yet, permitted the State to repudiate their agreement as to the agreed upon one count of Manslaughter; and told the petitioner that Murder 2nd Degree was indeed the same thing, persuading him to plea to said.  Of course, as a result, the plea upon which Massey entered into unknowingly and involuntarily, was indeed to Murder.

While considerations of comity and concern for the orderly administration of criminal justice, preclude a federal court from entertaining habeas petitions without some restriction, it is evident that this cause deserves their attention.

In the instant case, a State procedural default forecloses any available presentation to state courts for a proper exhaustion of the question.  As such, petitioner must show "cause" and resulting "prejudice" in order to overcome this default.  Herein, "cause" for the default is, ineffective assistance of counsel.  The U.S. Supreme Court explained in *Hill v Lockhart, supra:* "We hold, therefore, that the two part *Strickland v Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  In the context of guilty pleas, the first half of the *Strickland* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v Henderson,* 411 U.S. 258, 266-67, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); and *McMann v Richardson,* 397 U.S. 759, 771, 90 S.Ct. 366, 25 L.Ed.2d 763 (1970). 474 U.S. at 370-71.

15

The "prejudice" resulting from said, is an unconstitutionally involuntary plea that would not have otherwise been entered, and such would certainly undermine any confidence in the outcome of the proceedings.

WHEREFORE, your petitioner would pray that this Honorable Court issue this writ with instructions that this cause be remanded to the Circuit Court of Geneva County, whereby said would be further instructed to allow the petitioner to present evidence of the foregoing pleading by way of an evidentiary hearing, affidavit, written interrogatories, or deposition. See **Rule 32.9(a), Ala.R.Crim.P.**

Jim E. Massey, pro se
AIS # 109805
Limestone C.F. / Dorm D
28779 Nick Davis Road
Harvest, AL  35749-7009

16

