FILED OCT 25 '07 PM 12:55 USDC ALS

# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA

Name _Jim Edward Massey_

Prison Number _109805_

Place of Confinement _Limestone C.F., Harvest AL._

Action No. _07-664-KD-M    1:08 CV 194 - WKW_

(To be supplied by Clerk of U. S. District Court)

_Jim Edward Massey_ (PETITIONER)

(Full name under which you were convicted)

v.

_State of Ala. DOC Billy Mitchey_ (RESPONDENT)

(Name of Warden, Superintendent, Jailor, or authorized person having custody of petitioner)

## PETITION FOR WRIT OF HABEAS CORPUS BY A
## PERSON IN STATE CUSTODY

### Instructions - Read Carefully

(1) This petition must be legibly handwritten or typewritten, and signed by the petitioner under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form.

(2) Additional pages are not permitted except with respect to the facts which you rely upon to support your grounds for relief. No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

(3) Upon receipt of a fee of $5, your petition will be filed if it is in proper order.

(4) If you do not have the necessary filing fee, you may request permission to proceed in forma pauperis, in which event you must complete the "Motion to Proceed Without Prepayment of Fees and Costs" form mailed to you with this form, and have an authorized officer at the jail or prison complete the attached financial statement. The completed forms must be returned to the federal court clerk in Mobile.

Even if the court authorizes you to proceed without prepayment of filing fees, you are obligated to pay the full $5.00. If you have the ability to pay a partial filing fee when your complaint is filed, you will be

**Revised 10/6/04**

required to pay an amount, based on your assets, of up to the greater of 20% of your average monthly balance in your prison account, or your average monthly balance for six months immediately preceding the filing of your petition. Thereafter, your prison account will be garnished at the rate of 20% of your monthly income until the filing fee is paid.

(5)  Only convictions entered by one court at the same time may be challenged in a single petition. If you seek to challenge convictions entered by different courts in the same state or in different states, you must file separate petitions as to each court.

(6)  Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the petition you file seeking relief from any judgment of conviction.

(7)  When the petition is fully completed, the original and two copies must be mailed to the Clerk of the United States District Court whose address is 113 Saint Joseph Street, Mobile, Alabama  36602.

(8)  Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

(9)  You must immediately advise the Court of any change in your address, e.g., if you are released, transferred, moved, etc. Failure to notify the Court of your new address will result in the dismissal of this petition for failure to prosecute and to obey the Court's order.

## PETITION

1.  Name and location of court which entered the judgment of conviction under attack: Circuit Court of
_____Geneva_____ County, Alabama; Case Number __CC-97-027__;
Judge _P.B. McLauchlin, Jr._ . Other court, and case number, if not Circuit Court:

_____

2.  Date of judgment of conviction __9-22-97_____

3.  Length of sentence _____LIFE_____

4.  Nature of offense involved (all counts) __Murder_____

_____

_____

_____

**Revised 10/6/04**                                     2

5. What was your plea? (Check one)

    (a) Not guilty _____

    (b) Guilty _____✓_____

    (c) Nolo contendere _____

6. Kind of trial:  (Check one)

    (a) Jury _____

    (b) Judge only _____

7. Did you testify at the trial?  Yes _____     No _____

8. Did you appeal from the judgment of conviction?   Yes _____        No _____✓_____

9. If you did not appeal, explain briefly why you did not: _Attorney stated no appeal._

_____

_____

10. If you did appeal, answer the following:

    (a) Name of court ___N/A_____

    (b) Result _____

    (c) Date of result _____

    (d) Did you file a petition for rehearing? Yes _____   No _____; if yes, what was the result?

    _____

    _____

    When did the court rule on your petition? _____

    (e) Did you file a petition for certiorari? Yes _____   No _____; if yes, what was the result?

    _____

    _____

**Revised 10/6/04**                                  3

When did the court rule on your petition? _____

11.    Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions (Rule 20, Rule 32, Error Coram Nobis, Habeas Corpus), applications, or motions with respect to this judgment in any state court?

Yes _____    No ____✓____

12.    If your answer to 11. was "yes," give the following information:

(a)(1)  Name of court ___N/A_____    Date filed _____

(2)  Nature of proceeding (Rule 32, Rule 20, etc.) _____

_____

(3)  Grounds raised _____

_____

_____

_____

(4)  Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____    No _____

(5)  Result _____

(6)  Date of result _____

(b) As to any second petition, application or motion, give the same information:

(1)  Name of court _____    Date filed _____

(2)  Nature of proceeding _____

(3)  Grounds raised _____

_____

_____

(4)  Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____ No _____

(5) Result _____

(6) Date of result _____

(c) As to any third petition, application or motion, give the same information:

(1) Name of court _____ Date filed _____

(2) Nature of proceeding _____

(3) Grounds raised _____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____ No _____

(5) Result _____

(6) Date of result _____

(d) Did you appeal the result of action taken on any petition, application or motion to the highest state court having jurisdiction?

(1) First petition, etc.    Yes _____ No _____

Date filed _____ Result _____

Date of result _____

(2) Second petition, etc.  Yes _____ No _____

Date filed _____ Result _____

Date of result _____

(3) Third petition, etc.  Yes _____ No _____

Date filed _____ Result _____

**Revised 10/6/04**                    5

Date of result _____

(e) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

13. State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

Caution: In order to proceed in the federal court, you must first exhaust your state court remedies as to each ground on which you request action by the federal court. Also, if you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, you should raise in this petition all available grounds (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h)  Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(I)  Denial of effective assistance of counsel.

(j)  Denial of right of appeal.

A.  Ground one: *Conviction obtained by plea OF Guilty which was not Made Voluntarily, with Knowledge Necessary.*

1.  Supporting FACTS (tell your story <u>briefly</u> without citing cases or law): *( please see the "Brief in Support" previously on file @ CV-07-0664-KD-M And incorporate herein )*

2.  Did you raise this claim before the state courts on:

Direct appeal:  Yes _____  No ✓

Rule 20/32 Petition:  Yes _____  No ✓

Error Coram Nobis:  Yes _____  No ✓

State Habeas Corpus:  Yes _____  No ✓

3.  If you did not raise this claim before the state courts, tell why you did not: *( See above )*

_____

_____

_____

B.  Ground two: *Ineffective Assistance OF Trial Counsel*

_____

1.  Supporting FACTS (tell your story <u>briefly</u> without citing cases or law): _____ *( See A(1) Above )*

_____

2. Did you raise this claim before the state courts on:

Direct appeal:  Yes _____  No ___✓___

Rule 20/32 Petition:  Yes _____  No ___✓___

Error Coram Nobis:  Yes _____  No ___✓___

State Habeas Corpus:  Yes _____  No ___✓___

3. If you did not raise this claim before the state courts, tell why you did not (See A(1))

_____

_____

_____

C. Ground three  _N/A_____

_____

1. Supporting FACTS (tell your story briefly without citing cases or law): _____

_____

_____

2. Did you raise this claim before the state courts on:

Direct appeal:  Yes _____  No _____

Rule 20/32 Petition:  Yes _____  No _____

Error Coram Nobis:  Yes _____  No _____

State Habeas Corpus:  Yes _____  No _____

3. If you did not raise this claim before the state courts, tell why you did not: _____

_____

_____

_____

**Revised 10/6/04**                             8

D. Ground four: _N/A_____

_____

    1. Supporting FACTS (tell your story briefly without citing cases or law): _____

    _____

    _____

    2. Did you raise this claim before the state courts on:

Direct appeal:  Yes _____  No _____

Rule 20/32 Petition:  Yes _____  No _____

Error Coram Nobis:  Yes _____  No _____

State Habeas Corpus:  Yes _____  No _____

    3. If you did not raise this claim before the state courts, tell why you did not: _____

    _____

    _____

    _____

14.  A.  Have any of the grounds listed in this present habeas corpus petition ever been raised by you in

any other federal habeas corpus petition?  Yes _____  No __✓__.

If yes, which grounds? _____

_____

State the name and case number of your previous federal habeas corpus petition: _____

_____

    B.  Have you previously filed a habeas corpus petition attacking this present conviction in this or

any other federal court?  Yes _____  No __✓__.  If yes, state the name and case number of your previous

federal habeas corpus petition: _____

**Revised 10/6/04**                              9

_____

_____

15. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack? Yes _____ No __✓__. If yes, name the court:_____

_____

and state the name and case number of the petition or appeal: _____

16. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing _William J. Paul + David W. Rousseau,_
_P.O.Box 429 Geneva, AL, 36340_

(b) At arraignment and plea __Same as (a)__

_____

(c) At trial _____ N/A

_____

(d) At sentencing _____ Same as (a)

_____

(e) On appeal _____ N/A

_____

(f) In any post-conviction proceeding _Pro Se (instant petition)_

_____

(g) On appeal from any adverse ruling in a post-conviction proceeding _____
N/A

17. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time? Yes _____ No __✓__

**Revised 10/6/04**                                    10

18. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack? Yes _____ No __✓___

    (a) If so, give name and location of court which imposed sentence to be served in the future:

_____

_____

    (b) And give date and length of sentence to be served in the future: _____

_____

    (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future? Yes _____ No _____

19.    TIMELINESS OF PETITION: This petition is subject to a one-year statute of limitations contained in The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d):

    **(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —**

        **(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;**

        **(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;**

        **(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or**

        **(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.**

    **(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.**

If your judgment of conviction became final over one year ago, you must explain, in the space provided below, why the one-year statute of limitations contained in 28 U.S.C. § 2244(d) does not bar your petition.

19. 1 (d) Please see Argument contained in Brief in support of petition for cause And prejudice.

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

_____
Typed or printed name of attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed and delivered to custodial authorities for mailing on _____

_____ Oct 21, 2007 _____
(date)

_____
Signature of Petitioner *pro se*

28779 Nick Davis Rd.
Current mailing address

Harvest AL 35749-7009

Jim E. Massey, Ais # 109385
Limestone C.F. / Dorm D78-23A
28779 Nick Davis Rd.
Harvest, AL 35749



02 1A
0004355531        OCT 23 2007
$ 00.75⁰
MAILED FROM ZIP CODE 35749

This correspondence is forwarded from
an Alabama State Prison. The contents
have not been evaluated, and the Alabama
Department of Corrections is not
responsible for the substance or content
of the enclosed communication.

CLERK, United States District Court
Southern District of Alabama
113 St. Joseph St.
Mobile, AL
36602

LEGAL Mail

## BRIEF IN SUPPORT OF § 2254

**Ground I.**    *Plea of Guilt rendered involuntary due to the ineffectiveness of counsel, as guaranteed by the 6th Amendment of the U.S. Constitution;*

**Ground II.**    *Petitioner's conviction was obtained in violation of his 5th Amendment right against self-incrimination.*

## Statement of Case

Petitioner Jim Edward Massey, hereinafter "Massey", was arrested on the 7th day of January 1997, and charged with Murder made capital pursuant to ***Code of Alabama 1975 § 13A-005-040(a)(17)***, for the shooting death of his brother Johnny Roy Massey on January 6th, 1997. (Warrant # 97-16; Complainant: B.M. Tucker, ABI, Dothan, AL., 36301)    Massey was immediately thereafter indicted on January 9th, 1997, by a specially convened Grand Jury of Geneva County in a two (2) count indictment charging violations to ***Code of Alabama 1975 §§ 13A-5-40(a)(17) & 13A-5-40(a)(18)***. (Circuit Court Case # CC-97-27)

William J. Paul and David W. Rousseau, of P.O. Box 429, Geneva, Alabama, 36430, were appointed as counsel for Massey, and an arraignment was had in the Geneva County Circuit Court on the 6th day of February 1997; the Honorable Judge P.B. McLaughlin, presiding.    At arraignment, Massey pled 'not guilty' as to each count of the indictment.    A plethora of procedural motions passed between the parties, and on July 2, 1997, trial was ordered set, for September 22, 1997 at 9:00 A.M.

During the interim from the setting of the trial date in July, and the eventual date of trial in September, several *meetings and conversations* were held between counsels for Massey, and the District Attorney's office.    During these meetings, the State presented an offer of a plea agreement.    The offer presented essentially was, if Massey would agree to plead guilty to the lesser-included offense of Manslaughter as to Count II of the indictment, Count I would be nolle

1

### *Statement of the Facts*

Other than the Clerk's record, there exists no other documentation by which I, an inmate legal assistant, am able to ascertain the facts of the case. Herein, however, I present Massey's fact recitation and explanation; as well as other eyewitness accounts.

The law's truth never ends strictly with the evidence. It depends as well on what attorneys call 'inference' and what less-restricted souls refer to as 'imagination'. My surmises, my conjecture and inference - my imagining - would never pass muster in a courtroom. However, I regard them as the only avenue to the whole truth that the law –and a story – always demands.

In the instant case, to understand the present, one must observe the past. This story, an obvious tragedy of Greek proportions, begins with a long simmering sibling rivalry. Stubborn pride and familial secrecy were the primary actors on this stage. In 1980, petitioner Massey, at the behest of his mother, accepted some 30 acres of land on the family farm in Geneva County. At the time, Massey's brother, the victim in this case, Johnny Roy Massey, was living with their mother on another section of the 200+ acre property. Petitioner Massey did not reside in the home with his mother and brother Johnny, but instead had moved his own trailer onto the property, and resided therein.

Almost from day one, Johnny Roy Massey (hereinafter Johnny) seemed upset and unhappy with his brother Jim's presence on the farm. Each time, nearly, that the petitioner would venture over to his Mom's house to visit, if Johnny were there an argument would ensue. On one such occasion, shortly after Massey had moved, his brother Johnny, in a state of extreme agitation and inebriation told Massey that "this farm is not big enough for the two of us, not by a long shot!" Johnny seemed to continue this theme of discontent, and eventually, in 1985 it reached a boiling point. Johnny was known, by all that knew of him well, to own and carry a .38 caliber pistol, and after what was now seemingly an ongoing feud, one day in 1985, Johnny, riding as a passenger in

3

another car, ambushed the petitioner at a crossroads, firing his pistol into the petitioner's girlfriends automobile, upon which Massey was a passenger. Luckily, the petitioner was not struck, nor injured. And, in keeping with their familial *code of silence*, the family did not want any outsiders involved and, therefore, the incident was downplayed to the Sheriff, and no formal charges were brought against Johnny Massey. However, due to the seriousness of this act, Mrs. Massey, Johnny's mother, insisted that Johnny move out of the house that he shared with her, and that he leave the family farm. Johnny did so, by relocating to Florida.

Then in 1990, in a move to forgive, and attempt to reconcile the family, Mother Massey sold the old 6-acre homestead to Johnny; allowing him to move back on the family farm. He did this with the express blessings of the petitioner. During the time of Johnny's absence from the farm, his mother had constructed and moved into a new home, away from the homestead, thus, Johnny did not reside with her as before, but in his own home.

Shortly after Johnny's return, in August of 1991, Joe Massey, brother to Jim and Johnny, committed suicide. This act tended to unify the remainder of the family, as tragedy often does – including Jim and Johnny – and led to a period of peace therein. However, as one might well suspect, this peace was to be short lived. Johnny again became verbally abusive and threatening to the petitioner and, Massey again began to live in constant fear for his personal safety. It seems that Johnny was determined to run Massey away from the farm and, from his family.

Then in 1995, Johnny with his now familiar and seemingly ever present .38 pistol, went to the home of the petitioner and for no apparent reason, shot and killed one of the petitioner's goats. When confronted by the petitioner and asked why he had done this, Johnny in an obnoxiously intoxicated state, denied any participation in the shooting. During this confrontation however, Johnny drunkenly mumbled, apparently unaware even, that it was the petitioner he was talking to, said: "Eddies got to go" speaking of the petitioner. Now, while this was far from the first time

4

that Johnny had verbally threatened the life of Massey, the time stands out more profoundly in the mind of the petitioner as different, more ominous.... real.

Johnny's behavior continued to become increasingly more erratic and out of control, then in 1996, around eight months prior to his death, Johnny shot his wife with the .38 pistol. She lost a kidney and a portion of her liver as a result, but survived. Then, in what is a now all too unfamiliar theme, no charges were pressed against Johnny, as she claimed that she had shot herself, again, to keep it *"in the family"*.

Tragically, thereafter, on August 24, 1996, a second Massey brother, Danny, also committed suicide. The affects of this suicide devastated the petitioner, and he began to spiral into a depression, which resulted in, alcohol abuse; in the petitioner's ill-advised attempt to cope with his unbearable grief. This alcohol abuse continued by the petitioner, to where in time, he began to experience all of the manifestations commonly related to alcohol toxicity – paranoia, unfounded fears, and agitation, to name but a few. This paranoid fear contributed to the events that led to the death of Johnny Massey.

On the fated day, January 6th, 1997, all of these elements of past realities, coupled with the delusional paranoia and fear of the petitioner, collided with understandably devastating effects.

On this day, Massey drove over to his brother Johnny's house, in order to borrow a videotape that had belonged to their recently deceased brother Danny. When he asked Johnny for the tape, he refused to give it to him. Angry, Massey returned to his house, where he continued to drink for about four hours, all the while becoming more agitated with his brothers refusal to allow him to borrow the tape. Finally, he decided that he would go over to his mother's house and explain what had occurred. Just as Massey was arriving at the driveway of his mother, Johnny, who had obviously gone there prior, came pulling out. This put Johnny's car directly in front of Massey's car on the road. Rather than pull into his mother's, Massey began to follow Johnny.

(The following recitation of the accounts of that day is compiled from several eye witnesses to the occurrence, as the petitioner's memory of the day, is less than reliable) When Johnny noticed that Massey was following him, he abruptly stopped his auto, and opened his door. Massey stopped some distance behind him, (apparently fearful of getting too close to him, for fear Johnny might shoot at him, as he had done previously), and when he stopped, Johnny got back in his car and continued down the road. Suddenly, at the driveway of their other brother, William Wayne Massey, Johnny jerked his car into William's U-shaped drive. As Massey continued along the road, Johnny opened his car door, which was now on the opposite side of the auto from Massey's vehicle, which remained on the road. It was at this moment that Massey, for whatever confounded reason or manifestation of paranoid fear, fired his shotgun from his vehicle, into the passenger side door of Johnny Massey's vehicle. Massey continued on to his home, where he parked his car, and ran into the woods, fearing that his brother Johnny would be coming after him for shooting his truck. Little did not the petitioner know, nor suspect, that one of the pellets from his shotgun blast had hit Johnny Massey directly in the heart, killing him.

The next morning, the petitioner remembers coming out of the woods, only to find sheriff's deputies at his home. When they approached him, they told him that his brother was dead. At first, Massey was confused and stated, that he knew his brother was dead – he had killed himself last year. He did not realize that they were speaking of Johnny, and that he was responsible for his death.

To this date, petitioner Massey does not wish to tarnish the memory of his brother by speaking ill of him. But it should be more than apparent, that Johnny Massey was someone to be fearful of, and, in the instant case, as the facts bear out, one can easily see how the actions of this petitioner resulted in part from his long term fear of Johnny, and for his own life.

From the onset of the proceedings against this petitioner, he has shared his remorse and recognition of responsibility in the death of his brother. It is obvious listening to his recollection of these events, that he continues to grieve greatly over the death of his brother, and wishes as one might assume, that he would give anything to go back and re-live that day again. Yet, while understanding his respect for Johnny's brothers memory, I must present to you legal facts; one of which is simple – Petitioner Massey never formed any *mens rea* to injure his brother. He just reacted, and his reaction is not outside of the realm of any reasonable understanding of a jurist.

Given these facts, it is easy to see why the State was willing to reduce the charges to one count of Manslaughter, and in July, when petitioner's counselor Rousseau came to him with the plea agreement for Manslaughter, EVEN WITH THE UNDERSTANDING THAT SAID PLEA WAS TO RESULT IN A *LIFE* SENTENCE, petitioner Massey accepted the offer.

Obviously, Massey accepted this plea, not out of a fear of a greater punishment, but merely to accept a plea of responsibility wherein it could be noted that he never **intended** to hurt his brother. Moreover, in the ongoing vein of family secrecy, petitioner's family wanted him to accept any plea that would vitiate the need for a public trial, where any of their past family secrets might otherwise to revealed.

And, while this plea, should have been easily accomplished, it was not to be; as the attorney's for the petitioner, through self-serving actions, deprived the petitioner of even this, when they convinced him to plead guilty to Murder.

In order to properly evaluate the egregiousness of the ineffectiveness of this petitioner's counsel, it should be noted that Petitioner Massey has tested at an education level equivalent to that of a third grader. As such, he was not able to understand any legal jargon or nuances presented to him. He was therefore left in totality to trust and rely completely upon the advice and explanations of his attorney's. A cursory review of the case action summary sheet in the instant

7

case would seem to reveal that counsel's for the petitioner were imminently more concerned with billing hours and fee declarations, than they were in protecting the rights of there counsel; as the record is replete with frivolous motions and attorneys fee declarations requests.

Even after his attorney's had convinced Massey that pleading guilty to Murder 2nd Degree (?) was in his best interest, without telling him that the State was bound to honor the agreement that had previously been offered to and accepted by the petitioner, they went one cruel step further; they told the petitioner after his plea and sentence, not to worry, that they would let things die down a little, and then in a month or so – when we all know jurisdiction would be lost – get him back into court for a reduction of his sentence.  Sad.

Petitioner was denied his 6th Amendment guarantee of effective assistance of counsel, resulting in a breach of his 5th Amendment right to be free from self-incrimination. These violations of constitutional due process resulted when the attorney's for the petitioner allowed for the State to repudiate their plea agreement with impunity, thereby failing to act in a manner consistent with the edicts of *Strickland v Washington*, **466 U.S. 668 (1984).** This fundamental failure resulted in an erroneous conviction as petitioner's plea was rendered involuntary. The subsequent misinformation of the counsels to petitioner resulted in a procedural default. Such ineffectiveness is the cause for the procedural default, and the prejudice will be shown to be reflexive as to the result.

### *Procedural Default*

First, allow your petitioner to address head-on why this Court should hear this habeas petition, which is defaulted on its face due to the expressed statute of limitations applicable to said.

This petitioner has never filed for any collateral review of the above case, and additionally, his plea and sentence were entered on September 22, 1997; now nearly 10 years hence. as such, petitioner has no recourse in State court. The claims of this petitioner have heretofore been deemed non-jurisdictional; "a challenge to the voluntariness of a guilty plea is a not jurisdictional and. although it can be raised for the first time in a Rule 32 petition, it is subject to the limitations period in Rule 32.2(c) Ala.R.Crim.P"; *Catchings v State*, **684 So.2d 168, 169 (Ala.Crim.App.1995).** Also, "an ineffective assistance claim is not jurisdictional; therefore, it is subject to the two-year limitations period in **Rule 32.2(c)**", *Knight v State*, **727 So.2d 900, 901 (Ala.Crim.App.1999).**

The Alabama Criminal Court of Appeals noted in *Arthur v State*, **[Ms. CR-00-1393, April 25, 2001] 820 So.2d 886, 889;** that "the court's of this State insofar as our research shows, have

7

**never** recognized an exception to the limitations period in Rule 32.2(c). This rule is mandatory, not permissive, and specifically provides that a trial court 'shall not entertain any petition' if that petition is filed outside the limitations period and the petition fails to raise a jurisdictional defect", *Id.* **at 889,** (emphasis added).

As such, with all state avenues closed to petitioner, "[if] state remedies are no longer available, petitioner must show either 'cause and prejudice' or manifest injustice' to overcome the procedural default." *Towers v Phillips,* **7 F.3d 206, 210.** A petitioner may show cause for failure to raise and exhaust a claim by proving that "some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule" *Murray v Carrier,* **477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).** " Ineffective assistance of counsel...that makes compliance impracticable is sufficient grounds for 'cause'. *Id.* **at 488.** As for prejudice, petitioner "must show that...the result of the proceeding would have been different [lacking said ineffectiveness]" *Wright v Hopper,* **169 F.3d 695, 703 (11th Cir.1999).**

To prevail on a claim of ineffective assistance of counsel in the context of a guilty plea, Massey must satisfy the two-pronged test set forth in *Strickland v Washington,* **supra.** See also, *Hill v Lockhart,* **474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).** Second, Massey must show, in addition to the fact that counsels performed incompetently, that there is "a reasonable probability that, but for counsel's errors" there would have been a different outcome. *Hill,* **474 U.S. at 59.** A "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings. *Id.* **at 694.**

As we explore the law in relation to this petitioner's claims, and review said in the context of the facts of the instant case, it will become clear that petitioner will have shown adequate 'cause' and 'prejudice' to overcome the procedural defaults of his petition.

8

The writ of habeas corpus is "the great key of liberty to unlock the prison doors of tyranny". Such was the opening sentence of that great jurist, Thomas H. Watts, in the case of *Ex parte Williams*, in the county court of Pike County and quoted with approval by the Alabama Supreme Court in *State v Thurman*, 17 Ala.App. 656, 658, 88 So. 61. Habeas corpus is part of the law of this state, preserved to us under § 17 of the *Declaration of Rights*, that it may be used by those who are illegally restrained of their liberty. It cannot be bound down by the thongs of technical pleading, nor its swift and effective relief hindered by capitious objection or finespun theories of procedure. *Barton v Bessemer*, 27 **Ala.App 413, Ala.App 1936.**

In the instant case, petitioner's counsels failure to inform his client of the binding contractual agreement with the State was substantially prejudicial; as petitioner would not have plead guilty to a greater offense than that which he understood as to his plea agreement had he been so properly counseled. The courts of Alabama, as well as the federal courts have opined that a plea agreement is binding. There seems to be no apparent conflict with the progeny of the law with regards to such. Essentially, it is not incumbent upon a states attorney to enter into any plea-bargaining with a defendant. However, once the state has done so, they are bound to carryout their agreements, unless the defendant fails to perform per agreement.

The 11th Circuit has offered opinion as to the contractual obligations in regards to plea agreements. "Any interpretation of the negotiated plea should also adhere to the doctrine of *contra perferentum,* a canon of construction in contract law that counsel's in favor of construing ambiguities in contract language against the drafter. The 11th Circuit is also clear that the construction of plea agreements 'is governed generally by the principles of contract law, as we have adapted it for the purposes of criminal law'; See *U.S. v*

10

*Pielago*, 135 F.3d 703 (11th Cir.1998). It makes little sense to apply that canon to the defendant's detriment where the issue is whether the defendant knowingly and voluntarily waived a right in a plea agreement, and the defendant has raised ineffective assistance claims against his lawyer (the drafter of the agreement) regarding the plea agreement. *None* of our cases has applied the *contra perferentum* doctrine against a defendant in such a situation. Instead, in this circuit we have held repeatedly that ambiguities in plea agreements should be resolved against the government [state]. See **e.g., *San Pedro v U.S.*, 79 F.3d 1065, 1074 (11th Cir.1996); *U.S. v Rewis*, 969 F.2d 985 (11th Cir.1992); *U.S. v Jefferies*, 908 F.2d 1520, 1523 (11th Cir.1990); *Allen v Thomas*, 161 F.3d 667, 671 (11th Cir.1998).**

The essence of this argument is rather simple, while the procedural stairway is steep. Massey's plea was rendered involuntary because of the State's alleged breach of the plea agreement, and his counsel was ineffective for not bringing the alleged breach to the attention of the trial court. In reliance upon the State's offer, the petitioner's acceptance of said, and his attorneys counsel as to such; Massey relinquished his privilege against self-incrimination, effectively denying him his 5th Amendment guarantees.

Let us note that while there was not a written agreement that this petitioner will be able to produce, a verbal contract as employed in a plea agreement between counsel and state is deemed sufficient. Herein, petitioner's counsel Rousseau negotiated the plea agreement with the State, delivered the proposition to the petitioner, and he accepted. At no time did this petitioner ever repudiate the agreement with the State. There were no extraneous requirements of the agreement conveyed to the petitioner.

In *Ex parte Yarber*, 457 So.2d 1330, 1336 (Ala.1983), the Supreme Court addressed the necessity that there be in place a written agreement between the parties before it becomes

11

is to be construed in favor of the defendant. There existed no extraneous condition of the plea contract, whereby this petitioner, could be deemed to have been negligent. The State, with an unfettered path due to the petitioner's counsels failure to provide adequate constitutional representation, clearly repudiated the plea agreement. The result is manifestly unjust, as it has resulted in the conviction of *exactly* the type of individual that our due process constitutional writers envisioned in their drafting of said; an innocent, unable to intellectually protect themselves from legal complexity.

## *Conclusion*

There are several 'givens' in the instant case.....Petitioner Massey caused the death of his brother Johnny, on January 6th 1997, by shooting him with a shotgun. Counsels for the petitioner entered into a plea agreement with the office of the district attorney, after which, that same said agreement for a negotiated plea to Manslaughter was conveyed to, and accepted by, the petitioner. Petitioner Massey shared the contents of the plea agreement with several jailers and inmates at the Geneva County Jail. Most particularly, Massey spoke several times with Chief Deputy Ken Tice, who was aware of the Manslaughter plea agreement, and questioned Massey about the logistics of his entering the plea to the court. The transportation Deputy [Doe], from the jail, was also privy to the negotiated plea offer, as he had transported the petitioner to court on two (2) separate occasions ostensibly to enter this plea before the court. Counsels for the petitioner then, for no apparent reason, allowed the State to repudiate that agreement without informing the petitioner as to his rights according to said. This action rendered petitioner's subsequent misunderstood plea to Murder [2[nd] Degree], involuntary, as petitioner lacked the proper counsel or information to make a constitutionally informed decision to plea. You must also factor into this equation the intellectual capabilities of the petitioner in relation to his ability to comprehend counsels edicts. Progeny with regards to such teach us that this factor may not be ignored in such an evaluation. Voluntariness

14

of a plea implicates "*[I]gnorance, incomprehension,*" and " inducements" as well as "coercion, terror" and "threats". *Boykin v Alabama,* **395 U.S. 238, 242-43, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969).** Herein, petitioner was ignorant of the fact that there was no such available charge as Murder 2nd Degree, and believed his attorney's – as one should be able to do – in pleading to what he understood to be an admission to his "*involuntary*" killing of his brother. Petitioner Massey would **never** - even taking into consideration the insistence of his counsel and family - NEVER, have pleaded guilty to a charge that would deem him to have intentionally caused the death of his brother. His counsel was fully aware of this, and yet, permitted the State to repudiate their agreement as to the agreed upon one count of Manslaughter; and told the petitioner that Murder 2nd Degree was indeed the same thing, persuading him to plea to said. Of course, as a result, the plea upon which Massey entered into unknowingly and involuntarily, was indeed to Murder.

While considerations of comity and concern for the orderly administration of criminal justice, preclude a federal court from entertaining habeas petitions without some restriction, it is evident that this cause deserves their attention.

In the instant case, a State procedural default forecloses any available presentation to state courts for a proper exhaustion of the question. As such, petitioner must show "cause" and resulting "prejudice" in order to overcome this default. Herein, "cause" for the default is, ineffective assistance of counsel. The U.S. Supreme Court explained in *Hill v Lockhart, supra:* "We hold, therefore, that the two part *Strickland v Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v Henderson,* **411 U.S. 258, 266-67, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)**; and *McMann v Richardson*, **397 U.S. 759, 771, 90 S.Ct. 366, 25 L.Ed.2d 763 (1970)**. 474 U.S. at 370-71.

15

The "prejudice" resulting from said, is an unconstitutionally involuntary plea that would not have otherwise been entered, and such would certainly undermine any confidence in the outcome of the proceedings.

WHEREFORE, your petitioner would pray that this Honorable Court issue this writ with instructions that this cause be remanded to the Circuit Court of Geneva County, whereby said would be further instructed to allow the petitioner to present evidence of the foregoing pleading by way of an evidentiary hearing, affidavit, written interrogatories, or deposition. See **Rule 32.9(a), Ala.R.Crim.P.**

Jim E. Massey, pro se
AIS # 109805
Limestone C.F. / Dorm D
28779 Nick Davis Road
Harvest, AL  35749-7009

16